UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

THOMAS J. BLAKE,

  Petitioner,

 v.               Case No. 09-C-624

WILLIAM POLLARD, Warden,
Green Bay Correctional Institution,

  Respondent.

**DECISION AND ORDER ON FEDERAL HABEAS CORPUS PETITION**

  On June 24, 2009, the petitioner, Thomas Blake ("Blake"), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On June 29, 2009, Magistrate Judge William C. Griesbach issued an order under Rule 4 of the Rules Governing Section 2254 Cases directing the respondent to file an answer to the petition together with a motion and supporting memorandum, if appropriate, directed to the validity of Blake's claims. Upon consent of the parties to magistrate judge jurisdiction, the case was assigned to this court for further proceedings and the entry of final judgment.

  The respondent filed an answer to the petition. The parties then filed briefs stating their respective positions regarding Blake's claims. The issues presented by Blake's habeas corpus petition are now fully briefed and are ready for resolution. For the reasons set forth below, Blake's habeas corpus petition will be denied.

# I. PROCEDURAL AND FACTUAL BACKGROUND

The Wisconsin Court of Appeals summarized the events leading up to Blake's arrest as follows:

> According to the complaint, Blake's statement, and affidavits in support of search warrants, Blake related that he invited Christina Ross to his apartment, sexual contact ensued and Ross agreed to do "something kinky." Blake handcuffed her, turned her face down, lay on top of her and wound an extension cord four times around her neck. As Ross struggled for ten minutes, Blake tightened the cord and covered her mouth when she tried to scream. Blake held the cord around her neck for another half hour to make sure she was dead. Blake then told a friend who was in another room that he "just killed Christina." They put Ross's sheet-and duct tape-wrapped body in the trunk of Ross's car and abandoned the car in a parking lot. Subsequent investigation revealed that Blake said his girlfriend knew he had talked in the past about killing Ross and that he wrote in his journal about an unrelenting "thirst for killing." Blake also had told his roommate he would like to kill someone and said numerous times he could do it with "things around the house."

*State v. Blake*, 762 N.W.2d 863, ¶ 2 (Wis. Ct. App. 2008) (unpublished).

On August 30, 2005, Blake, represented by public defenders John Kuech ("Kuech") and Steve Smits ("Smits"), entered a no contest plea to the first-degree intentional homicide charge, with the understanding that the State would move to dismiss the hiding-a-corpse charge, but would read in the charge at sentencing. (Ex. B at 1.) The State would recommend a life sentence with either no possibility of release on extended supervision or release only after Blake served sixty years. (Ex. B at 1.)

After entering the plea, Blake told Kuech and Smits for the first time that Christina Ross's ("Ross") death was the result of "sex gone bad." *Blake*, 762 N.W.2d at ¶ 3. Kuech and Smits withdrew as counsel at Blake's request and Leonard Kachinsky ("Kachinsky") was appointed. *Id*. Blake moved to withdraw his plea on grounds that he entered it without being advised of the possible lesser-included offense of reckless homicide. *Id*. Blake argued that his attorneys ignored him when Blake told them

that choking Ross with an extension cord was intended to enhance the her sexual "high." (Ex. B at 9.) The court concluded that Blake did not present a fair and just reason for withdrawing his plea, so it denied the motion. *Blake*, 762 N.W.2d at ¶ 3.

At sentencing, the court heard from eight of Ross's friends and family members, the State, and the defense. *Id*. at ¶ 9. Included in the victim impact statements was a slideshow of pictures of the victim, presented by the victim's mother, which was set to a song written for the victim by a friend. (Ex. J at 34.) Additionally, the victim's father presented two autopsy photos of the victim to the court. (Ex. J at 55.) Kachinsky did not object to the slideshow, believing he had no legal basis to do so. *Blake*, 762 N.W.2d at ¶ 18.

After reviewing the presentence investigation report and listening to the victim impact statements, as well as recommendations from the State and the defense, the court sentenced Blake to life in prison without the possibility of extended supervision. *Id*. at ¶ 19.

Blake appealed the decision to the Wisconsin Court of Appeals arguing that both pre-plea and post-plea counsels' performances were deficient and also arguing that the trial court abused its discretion by denying Blake's pre-sentence request to withdraw his no contest plea. (Habeas Pet. at 3.) The Wisconsin Court of Appeals issued its opinion on November 12, 2008, affirming the trial court's judgment. (Habeas Pet. at 3.)

Blake also sought further review of the appellate court decision by the Wisconsin Supreme Court raising ineffective assistance of counsel of both his pre-plea and post-plea counsel. (Habeas Pet. at 3.) On February 10, 2009, the Wisconsin Supreme Court denied Blake's petition for review. (Habeas Pet. at 3.)

Blake then filed his federal habeas petition asserting ineffective assistance of counsel in both

his pre-plea and post-plea counsel. (Habeas Pet. 7–8). Although Blake technically lists four grounds for relief in his petition, he asserts only two claims. First, he argues that his pre-plea counsel failed to advise him of the lesser-included offense of reckless homicide prior to entering a no contest plea to first degree intentional homicide. (Habeas Pet. at 7.) Second, he argues that counsel at the sentencing hearing failed to pre-screen or object to the PowerPoint presentation of pictures of the victim, with accompanying music. (Habeas Pet. at 8.) He claims that the presentation was inflammatory and resulted in an unfair sentencing hearing. (Habeas Pet. at 8.) Blake also asserts a third ground for relief in his accompanying briefs. He argues that the autopsy photos shown by the victim's father at the close of his statements to the court were inflammatory and unduly prejudicial, causing the trial court to impose a harsher sentence than it would have without viewing the photos. (Pet'r's Br. at 3.)

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act, a federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

A federal court may grant habeas relief if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). "Clearly established federal law" refers to the holdings, as opposed to the dicta of the Supreme Court of the United States. *Washington v. Smith*, 219 F.3d 620, 627 (7th Cir. 2000). The petitioner may not rely merely on precedent established by the circuit courts. *Henry v. Page*, 223 F.3d 477, 480 (7th Cir. 2000). For a state court's decision to be "contrary to" clearly established federal law, the decision must be "substantially different from relevant [Supreme

Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Additionally, the "unreasonable application of" analysis focuses not on whether the decision was correct, but whether the decision was unreasonable. *Washington*, 219 F.3d at 628. A reviewing court may not "substitute [its] independent judgment as to the correct outcome . . . ." *Id*. In other words, a court must determine that "the state-court decision was both incorrect *and* unreasonable before [it] can issue a writ of habeas corpus." *Id*.

A federal court may also grant habeas relief if the State court decision resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(2). Under § 2254(e)(1), "a determination of a factual issue made by a State court [is] presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."

To proceed in federal court, a habeas petitioner must first provide the state courts with "a fair opportunity to apply constitutional principles and correct any constitutional error committed by the trial court." *United States ex rel. Sullivan v. Fairman*, 731 F.2d 450, 453 (1984). The petitioner must do more than merely present all the facts necessary to support the federal claim to the state court. *Anderson v. Harless*, 459 U.S. 4, 6 (1982). The petitioner must have actually presented the claim in such a way that the state court was alerted to any applicable constitutional grounds for the claim. *Sullivan*, 731 F.2d at 453. Before considering a petition for habeas corpus on its merits, the court must inquire into whether the petitioner exhausted all available state remedies and whether the petitioner raised all his claims during the course of the state proceedings; if the answer to either of these inquiries is "no," the petition is barred either for failing to exhaust state remedies or for procedural default. *Kurzawa v. Jordan*, 146 F.3d 435, 440 (7th Cir. 1998).

Under the exhaustion doctrine, a claim is exhausted for habeas corpus purposes if the petitioner

presented the claim to the highest court of the state for a ruling on the merits, or if state remedies are no longer available to the petitioner. *United States ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1132 (7th Cir. 1990). Where a habeas petitioner has already pursued his state-court remedies and no other state corrective process exists, it is not the exhaustion doctrine that stands as a bar to habeas relief, but rather the separate but related doctrine of procedural default. *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004).

The procedural default doctrine precludes a federal court from reaching the merits of a habeas claim when (1) the petitioner presented the claim to the state courts and the state court decision rests on an adequate and independent state-law procedural grounds, or (2) the petitioner did not present the claim to the state courts and those state courts would hold the claim procedurally barred. *Id*. However, the petitioner may be excused from his failure to raise the claim in state courts if he can demonstrate cause for the default and resulting prejudice, or if he can show that a failure to grant relief would produce a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

In order to establish "cause" for his default, a petitioner must demonstrate that an objective external impediment blocked him from asserting his claim in state court. *Murray v. Carrier*, 477 U.S. 487, 488 (1986). For prejudice, the petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). The alternative argument, "miscarriage of justice," requires that the petitioner demonstrate actual innocence of the substantive offense. *Carrier*, 477 U.S. at 496.

### III. DISCUSSION

A petitioner's claim of ineffective assistance of counsel is analyzed under the two-part test

6

described in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "To prevail on an ineffective-assistance-of-counsel claim under *Strickland*, a petitioner must demonstrate that his counsel's assistance was objectively unreasonable and resulted in a substantial risk of prejudice." *Brown v. Finnan*, 598 F.3d 416, 419 (7th Cir. 2010). Review of an attorney's performance is highly deferential and the attorney is presumed to have advised his client effectively. *Berkey v. United States*, 318 F.3d 768, 772 (7th Cir. 2003). However, if the petitioner presents "specific acts or omissions of his counsel that constitute ineffective assistance" then the court will consider "whether these acts or omissions were made outside the wide range of professionally competent assistance." *Id.*

The petitioner argues three instances of ineffective assistance of counsel. First, he argues that his pre-plea attorneys erroneously failed to advise him regarding a lesser-included offense of reckless homicide. Second, Blake asserts that his counsel's failure to pre-screen or object to the PowerPoint slideshow presented by the victim's mother resulted in a prejudicial sentencing hearing. Third, Blake argues that at the sentencing hearing, his attorney's failure to object to two autopsy photos of the victim shown during the victim's father's impact statement resulted in a prejudicial hearing, and ultimately led to a harsher sentence. The court addresses each claim below.

### A. Ineffective Assistance of Pre-Plea Counsel

Blake asserts that his pre-plea counsel failed to advise him on a possible lesser-included offense, and without this advice, he entered a plea of nolo contendere, which he would not otherwise have agreed to do.

In evaluating whether counsel was ineffective during plea negotiations, the court should apply the *Strickland* two-part test. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). If the petitioner proves that counsel's actions were objectively unreasonable, then the petitioner must prove prejudice under

7

*Strickland* by showing that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty or would have insisted on going to trial. *Id*. at 59.

Kuech testified at the *Machner*[1] hearing that he was aware of sexual relations between Blake and the victim, but Blake denied engaging in sex with the victim immediately preceding her death. *State v. Blake*, 762 N.W.2d 863, ¶ 5 (Wis. Ct. App. 2008) (unpublished). Kuech testified that in "at least fifteen or twenty conferences [Kuech and Smits] had with Blake, Blake never said Ross's killing was accidental." *Id*. Kuech also stated that he did not ask about whether handcuffs and the extension cord were part of a sexual encounter because he did not want to "plant that [idea] if it didn't happen." *Id*. Further, Kuech explained that he and Smits reviewed the jury instruction and every element of the offense that the State would bear the burden of proving, including intent, and that Blake appeared to understand. *Id*. at ¶ 6.

The facts recited above indicate that counsel's actions were not outside "the wide range of professionally competent assistance," as required by *Strickland*. Counsel did not advise Blake on the lesser-included offense of reckless homicide because Blake did not provide counsel with the facts necessary to believe that such an option was available. According to counsel's testimony, Blake never told counsel prior to entering a plea that Ross's death was an accident or that it was ultimately the result of "sex gone bad." In fact, the circumstances indicate that the death was not an accident, but intentional. Blake admitted to the police that he committed the murder and told police that no sexual acts were occurring at the time. Furthermore, his journal included entries discussing his desire to kill and Blake specifically mentioned killing Ross to his girlfriend.

---

[1]A *Machner* hearing is a post-conviction evidentiary hearing to determine trial counsel's effectiveness. *See State v. Machner*, 285 N.W.2d 905, 908–09 (Wis. Ct. App. 1979).

8

The State court did not base its decision on an unreasonable determination of the facts, in light of the evidence presented in the state-court proceedings. As mentioned above, "a determination of a factual issue made by a State court [is] presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The Wisconsin Court of Appeals summarized the factual findings of the trial court relating to this issue as follows:

> The trial court found Kuech's and Smits'[s] testimony to be "overwhelming" and corroborated by Blake's statement to the police, discovery materials and statements to others indicating a general desire to kill. It also found that Kuech's and Smits'[s] credibility far outweighed Blake's, and that Kuech did not have factual reasons to consider the possibility of reckless homicide or an obligation to "plant" the notion of that defense .

*Blake*, 762 N.W.2d at ¶ 15.

Blake does not rebut these factual findings with clear and convincing evidence. He merely reiterates his late-stage testimony that the victim's death was the result of "sex gone bad." However, the evidence corroborating pre-plea counsels' testimony is plentiful, including a statement made by Blake to police that the death was intentional. The court finds that continuing to reiterate the strength of the evidence against Blake's contention that the death was accidental is unnecessary here. Instead, the court concludes, based on the evidence in the record, that Blake has not met his burden of proving to the court by clear and convincing evidence that the trial court's factual findings are incorrect. With the presumption that the trial court's factual findings are correct, the court therefore finds that the Wisconsin Court of Appeals did not base its decision on an unreasonable determination of the facts.

Thus, the court agrees with the Wisconsin Court of Appeals that Blake was unable to establish that his pre-plea counsel was objectively unreasonable. The court finds that the Wisconsin Court of

9

Appeals did not enter a decision that was contrary to or an unreasonable application of clearly established Supreme Court precedent, nor did it base its decision on an unreasonable determination of the facts. Further, because Blake is unable to demonstrate that his counsels' actions were objectively unreasonable, the court need not address the prejudice prong of *Strickland*. Therefore, the court affirms the Wisconsin Court of Appeals's decision on this claim.

## B. Ineffective Assistance of Post-Plea Counsel

In his petition, Blake claims that his post-plea counsel was ineffective for failing to pre-screen and object to a PowerPoint slideshow picture montage of the victim. (Habeas Pet. at 8.) In his supporting briefs, Blake also claims that he was prejudiced by his counsel's failure to object to two specific photos. These photos, presented during the victim's father's statements, were taken during the victim's autopsy. Blake described them as depicting a "grizzly" murder scene, where the victim appeared to have been "savagely beaten without remorse." (Pet'r's Reply Br. at 6.) The court does not reach the merits of the first claim, however, because the petitioner does not argue that the Wisconsin Court of Appeals's decision on ineffective assistance of counsel relating to the PowerPoint slideshow was erroneous. Additionally, the court does not reach the merits of Blake's second claim because the claim is procedurally defaulted and because Blake failed to comply with Rule 2(c) of the Rules Governing Section 2254.

*1. Blake No Longer Claims Ineffective Assistance of Counsel Based on Counsel's Failure to Object to the PowerPoint Photo Montage of Ross's Life Played at Sentencing.*

Although Blake argued in the state courts and claimed in his habeas petition that his counsel's failure to object to the PowerPoint presentation at his sentencing resulted in a harsher sentence, Blake does not make that argument in his supporting briefs. In his brief in support of his petition, Blake

states:

> The Ross family had shown a "Power Point Presentation" with music was the inflammatory part, [sic] It was the showing of the Autopsy photos later on in the victim witness statements. Mr. Ross had presented these two photos in a way of "Before an After". Before being the "Power Point Presentation" and "After" being the Autopsy photos. These two photos are what caused the inflammatory response.

(Pet'r's Br. at 3). Although the first sentence set forth above is ambiguous, the remaining words in the paragraph indicate that Blake does not object to the PowerPoint presentation. Instead, he argues the autopsy photos are the real issue.

Blake further discussed the autopsy photos in his reply brief stating:

> The Ross family had asked to show a "Power Point" presentation. These photos depicted the life of the victim, Christina Ross, which Blake does not have a problem with. It was the two Autopsy photos that were shown after the Power Point presentation. Mr. Ross, the victim's father, had presented to the sentencing judge in a way of "before and after" . . . . Sentencing counsel should have objected to these two photos being shown.

(Pet'r's Reply Br. at 6).

Based on the petitioner's own words, Blake does not argue a constitutional violation based on his post-plea counsel's failure to object to the PowerPoint slideshow. Because the petitioner does not object to the Wisconsin Court of Appeals's decision on this claim, the court finds no reason to reach the merits of this claim.

*2. Blake's Claim of Ineffective Assistance of Counsel for Failing to Object to the Two Autopsy Photographs Presented by the Victim's Father is both Procedurally Defaulted and Made in Violation of Rule 2(c) of the Rules Governing Section 2254 Cases.*

Where a claim was not presented to the state courts and it is now clear that those courts would hold the claim procedurally barred, the federal court is precluded from reaching the merits of the claim. *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). However, an exception apples if the petitioner

demonstrates cause for the default and prejudice resulting therefrom, or he convinces the court that a miscarriage of justice will result if the court does not reach the merits of his claim. *Id*. Additionally, a court may raise a procedural default defense *sua sponte*. However "the court is not permitted to override the state's decision implicit or explicit . . . to forego that defense." *Henderson v. Thieret*, 859 F.2d 492, 498 (7th Cir. 1988). The state explicitly waives a procedural default defense by expressly declining to raise it. *Id*. at 497–98. Alternatively, the state may implicitly waive the defense "when its response to the petitioner's claim is inconsistent with an intent to preserve that defense." *Perruquet*, 390 F.3d at 516.

The state did not raise the defense of procedural default. In fact, the state failed to address Blake's argument regarding the autopsy photos at all, discussing only the PowerPoint presentation shown by the victim's mother. However, Blake failed to alert the state to this claim by listing it in his petition. Instead, he devoted only one paragraph in each brief to the issue. Because the state did not discuss the claim relating to the autopsy photos and because Blake failed to provide notice of the claim to the state through the petition, this court does not find that the state explicitly or implicitly waived the procedural default defense. Therefore, the court may raise the defense of procedural default *sua sponte*.

While appealing to the Wisconsin Court of Appeals and the Wisconsin Supreme Court, Blake did not present a claim based on ineffective assistance of counsel due to a failure to object to the autopsy photos. In the state courts, he argued only that his counsel should have objected to the slideshow presented by the victim's mother, not that his counsel was ineffective for not objecting to the autopsy photos shown during the victim's father's statements. Additionally, the petitioner does not provide a reason for his inability to bring the claim in the state courts, and the court is unable to find facts supporting cause and prejudice in the record. Blake is also unable to meet the "miscarriage of

justice" exception because he does not argue actual innocence of the crime for which he was convicted. Therefore, the court finds that Blake does not meet the exceptions to the procedural default doctrine, barring the court from reaching the merits of his claim.

Additionally, Rule 2(c) of the Rules Governing Section 2254 Cases requires a habeas petitioner to "specify all the grounds for relief which are available" and "set forth in summary form the facts supporting each of the grounds thus specified." In his petition, Blake did not assert ineffective assistance of counsel due to his counsel's failure to object to the two autopsy photos. He only set forth the facts relating to his counsel's failure to object to the PowerPoint slideshow. Because Blake did not present the claim in his habeas petition, he may not now argue the claim to this court.

The court finds that this claim is procedurally defaulted and that the petitioner failed to assert the grounds for relief and the facts supporting the grounds for relief on this specific claim in violation of Rule 2(c). Therefore, the court will not address the merits of this claim.

In conclusion, and for all the foregoing reasons, Blake's petition for a writ of habeas corpus will be denied and this action will be dismissed.

There is one final matter to address. The recently amended provisions of Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides, in pertinent part, as follows:

> a) Certificate of Appealability. The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). If the court denies a certificate, the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

Under 28 U.S.C. § 2253(c), a district court may issue a certificate of appealability "only if the

13

applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court of appeals has held that this standard differs only in scope from the certificate of probable cause standard that was previously developed and applied by the courts. *See Herrera v. United States*, 96 F.3d 1010, 1012 (7th Cir. 1996). The *Herrera* court said that "a certificate of probable cause places the *case* before the court of appeals, but a certificate of appealability must identify each *issue* meeting the 'substantial showing' standard." *Id*. (emphasis added). Thus, for the court to issue a certificate of appealability to Blake, it must identify for the court of appeals the issues that are "debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'" *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (emphasis added) (quoting *Gordon v. Willis*, 516 F. Supp. 911, 913 (N.D. Ga. 1980)). This test was reiterated in *Miller-El v. Cockrell*, 537 U.S. 322 (2003), *rev'd on other grounds, Miller-El v. Dretke*, 545 U.S. 231 (2005).

> Consistent with our prior precedent and the text of the habeas corpus statute, we reiterate that a prisoner seeking a COA need only demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.

*Id.* at 327 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

In my opinion, and for the reasons set forth in this decision denying Blake's habeas corpus petition, none of Blake's claims warrants a certificate of appealability. Put simply, the petitioner has not demonstrated "a substantial showing of the denial of a constitutional right" by demonstrating either that jurists of reason could disagree with this court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.

Consequently, the court will deny Blake a certificate of appealability. Of course, Blake retains the right to seek a certificate of appealability from the court of appeals. *See* Fed. R. App. P. 22(b).

**NOW THEREFORE IT IS ORDERED** that Blake's petition for a writ of habeas corpus be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**SO ORDERED** this 15th day of October 2010, at Milwaukee, Wisconsin.

**BY THE COURT:**

s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge